**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of itself and all others similarly situated, <br><br>     Plaintiff, <br><br>   v. <br><br> AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, <br><br>     Defendants. | CIV. NO. 08-CV-4772 <br><br> Hon. Richard J. Sullivan <br><br><br> **MEMORANDUM IN SUPPORT OF THE CITY OF SAGINAW POLICE AND FIRE PENSION BOARD'S MOTION FOR CONSOLIDATION OF ALL RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL** |
| JAMES CONNOLLY, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>   v. <br><br> AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, <br><br>     Defendants. | CIV. NO. 08-CV-5072 <br><br> Hon. Richard J. Sullivan |

383518-1

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | CIV. NO. 08-CV-5464 |
| Plaintiff, | Hon. Richard J. Sullivan |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | |
| Defendants. | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated, | CIV. NO. 08-CV-5560 |
| Plaintiff, | Hon. Richard J. Sullivan |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF THE CITY OF SAGINAW POLICE AND FIRE PENSION BOARD'S MOTION FOR CONSOLIDATION OF ALL RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

_____

## PRELIMINARY STATEMENT

The City of Saginaw Police and Fire Pension Board ("SPFPB"), respectfully submits this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order: (i) consolidating all related actions; (ii) appointing SPFPB as the Lead Plaintiff in the consolidated action and any subsequently filed related cases; and (iii) approving its selection of Lockridge Grindal Nauen P.L.L.P. and Mager & Goldstein LLP as Lead Counsel.

SPFPB acquired 8,230 shares of American International Group, Inc. ("AIG" or the Company") common stock[1] during the relevant period, between May 11, 2007 and May 9, 2008 (the "Class Period"), and as a result has suffered losses of approximately $268,680.00.    SPFPB is familiar with the applicable provisions governing the appointment of the lead plaintiff in securities class actions, understands its responsibilities to the class, and is willing and able to oversee the prosecution of this action.    SPFPB will ensure that the litigation is conducted in the best interests of the members of the Class and is not subject to any unique defenses that would render it incapable of adequately representing the Class.    SPFPB has retained experienced counsel and respectfully requests that the Court grant its motion to be appointed Lead Plaintiff and approve its selection of Lockridge Grindal Nauen P.L.L.P. and Mager & Goldstein LLP to serve as Lead Counsel.

---

[1]  A copy of the SPFPB's certification setting forth its transactions in AIG's common stock is attached as Exhibit A to the Affidavit of Lisa M. Pollard submitted herewith.

## FACTUAL BACKGROUND

The captioned actions allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market during the Class Period and thereby artificially inflating the price of AIG securities.  Defendants are the Company and certain of its top officers:  Martin Sullivan, Steven Bensinger, Joseph Cassano and Robert Lewis.  The Complaints filed allege that throughout the Class Period, Defendants repeatedly assured investors that AIG's superior risk management and diversification had successfully insulated the Company from the turbulent and susceptible credit markets through 2007.  In reality, AIG had concealed or recklessly ignored pending risks regarding the mounting losses on the Company's assets and insurance products tied to the residential mortgage market.

During the Class Period, AIG made repeated statements heralding the Company's sophisticated and conservative risk management strategies and policies.  The Company consistently assured investors of its "super senior" credit default swap ("CDS") portfolio, representing to investors the material fact that it was "highly unlikely" to suffer any actual losses as a result of the "mortgage meltdown."

The truth concerning AIG's exposure to the credit market and the losses AIG faced as a result of the deterioration in its CDS portfolio began to emerge on February 11, 2008, when AIG revealed to investors that the Company's independent auditor, PricewaterhouseCoopers LLC ("PwC"), discovered material weaknesses in the Company's financial reporting and oversight, and subsequently insisted that the

Company drastically modify its method of accounting in its CDS portfolio. Thus, according to the Company, by applying the proper valuation method, AIG's actual losses on its CDS portfolio more than quadrupled, to between $4.5 and $6.0 billion as of November 30, 2007, from the $1.4 to $1.5 billion loss valuation first reported by the Company at a December 5, 2007 investor meeting. AIG further disclosed that PwC had uncovered a "material weakness in its internal control" over financial reporting and oversight relating specifically to its accounting for these derivative securities.

On February 28, 2008, merely two weeks after the Company made its announcement concerning the actual losses on its CDS portfolio, AIG again revised the valuation on its CDS portfolio, reporting an upward modification of cumulative losses of $11.5 billion as of December 30, 2007, a substantial increase from the $1.4 to $1.5 billion loss valuation first reported in early December of 2007, and subsequently revised in early February 2008 to $4.5 and $6.0 billion. Additionally, AIG admitted that its CDS portfolio had $6.5 billion in liquidity puts written on sub-prime residential mortgage related collateralized debt obligations ("CDO"), and the Company had been forced to repurchase $754 million in CDO securities in 2007, while at the same time providing $3 billion in liquidity to third parties.

Finally, on May 8, 2008, the Company shocked investors by reporting a massive $7.8 billion loss in the first quarter of 2008 -- the worst performing quarter in the Company's 40 year history, which the Company largely attributed to an astonishing $9.1 billion additional decline in valuation of its CDS portfolio. Furthermore, AIG announced

a plan to raise $12.5 billion in capital through a common stock offering and an equity-linked offering.

The fraudulent scheme deceived the investing public. Defendants' knowing or reckless misleading statements and inadequate disclosure of material facts, including the massive losses inflicted on the Company's CDS portfolio, caused SPFPB and other members of the Class to purchase AIG common stock at artificially inflated prices. When AIG's true financial condition was finally revealed, the price of AIG stock plummeted, wiping out tens of billions of dollars in shareholder value and causing substantial damage to the members of the Class.

## ARGUMENT

### I.     Related Actions Should Be Consolidated

The PSLRA, among other things, provides for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(ii) of the Exchange Act addresses the issue of consolidation of similar actions filed under the PSLRA:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)(I)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4(a)(3)(B)(ii). Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders

concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. Each of the above captioned actions involves claims made on behalf of class members who purchased or otherwise acquired AIG securities during the Class Period. SPFPB believes that consolidation is appropriate for the related actions filed in this Court because they involve common questions of law and fact and allege the same or similar claims under the federal securities laws on behalf of the same or similar plaintiff classes. *See Kaplan v. Gelfond,* 240 F.R.D. 88, 90-91 (S.D.N.Y. 2007); *see also Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (finding consolidation appropriate when the court is presented with similar complaints in securities actions based on the same public information formulating the same common questions of law and fact). Therefore, in light of the well recognized principle that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs," it is appropriate to consolidate these securities class actions under Rule 42(a). *Kaplan*, 240 F.R.D. at 91 (citing *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 293-94 (E.D.N.Y. 1998)). In addition, all of the captioned actions will involve similar issues regarding class certification, and will likely involve identical discovery of the parties and of non-parties. Accordingly, these actions should be consolidated for all purposes in the interest of judicial economy and overall efficiency.

SPFPB therefore, respectfully requests that the Court consolidate the above captioned actions and any subsequently filed related actions.

## II.    SPFPB Should Be Appointed Lead Plaintiff For The Consolidated Action

### A.    The Procedures Required By The PSLRA

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiff to oversee class actions brought under the federal securities laws.  Specifically, §21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice informing class members of the action and its their right to file a motion for the appointment as lead plaintiff.  On May 22, 2008, the plaintiff who first filed a complaint against AIG published notice over *Marketwire*, a widely circulated national business-oriented wire service.  *See* Pollard Aff., Ex. B.  When, multiple actions are brought on behalf of a class asserting substantially the same claims, only the plaintiffs in the first filed action must publish notice.  15 U.S.C. §77z-1(a)(3)(A)(ii).

The PSLRA provides that within 60 days after the initial publication of notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i)(II).  Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as lead plaintiff in response to any such notice by not later than 90 days after the date of publication of the notice pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions

asserting substantially the same claim or claims. Under this section, the Court is directed to consider any motion made by a class member and appoint as lead plaintiff the class member or members that the Court determines to be most capable of adequately representing the interests of all class members.

> In determining the "most adequate plaintiff" the PSLRA provides that:
>
>> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
>> (aa)    has either filed the complaint or made a motion in response to a notice . . .;
>
>> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**B**.    **SPFPB Satisfies The Lead Plaintiff Provisions Of The PSLRA**

**1.    SPFPB Has Complied With The PSLRA**

On May 22, 2008, the plaintiff who first filed a Complaint against AIG published notice pursuant to the requirement of the PSLRA. *See* Pollard Aff., Ex. B. The notice advised Class members of the existence of the securities class action lawsuit against AIG and certain of its officers, the claims asserted therein, the Class Period and their right to move for lead plaintiff. As such, the time period in which Class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)((3)(A) and (B) expires on July 21, 2008. Pursuant to the PSLRA and within the requisite time frame after

publication of the required notice, SPFPB hereby respectfully and timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class. *See* Pollard Aff., Ex. B.

SPFPB has executed a Certification stating that it has reviewed the Complaint filed in the action, and is willing to serve as a representative party on behalf of the Class. *See* Pollard Aff., Ex. A. The Certification attests that SPFPB purchased 8,230 shares of AIG securities during the Class Period and as a result suffered economic harm of roughly $268,680.00. *See* Pollard Aff., Ex. A. In addition, SPFPB has selected and retained experienced and competent counsel to represent them and the Class.

### 2.    SPFPB Has The Largest Financial Interest In The Relief Sought

Presumptively, the most adequate plaintiff is the person or group of persons that in the determination of the Court has the largest financial interest in the relief sought by the class. 15 U.S.C. §77z-1(a)(3)(B)(iii)(I); *see Bhojwani v. Pistiolis*, 06 Civ. 13761, 2007 WL 2197836, at *6 (S.D.N.Y. June 26, 2007).

Institutional investors like SPFPB are well suited as lead plaintiffs because they are usually sophisticated investors with large financial interests who will serve the class well as lead plaintiff. *See In re Veeco Instruments, Inc*., 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005) (finding that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs" in large class action securities litigation); *see also Bassin v. deCODE Genetics, Inc*., 230 F.R.D. 313, 315-16 (S.D.N.Y. 2005) (noting that the purpose of the PSLRA is to attract institutional investors to serve as lead plaintiffs).

The certification of SPFPB demonstrates that it acquired 8,230 shares of AIG common stock during the class period at prices artificially inflated by Defendants' false and misleading statements. *See* Pollard Aff., Ex. A. SPFPB may have the largest financial interest in the relief sought by the Class of any Class member willing and able to serve as Lead Plaintiff.

### 3.    SPFPB Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires four prerequisites that a party must satisfy to serve as a class representative: numerosity, commonality, typicality and adequacy. Fed.R.Civ.P. 23(a). With respect to the qualifications of the class representative, Rule 23(a) requires that its claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. At this stage of the litigation, SPFPB need only make a preliminary showing that it satisfies the typicality and adequacy requirements. *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003). In fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration on a motion for class certification. *Id.* Moreover, the PSLRA provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that the investor with the largest financial interest "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of

adequately representing the class." 12 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Thus, in deciding a lead plaintiff motion, the Court may limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, SPFPB satisfies the typicality and adequacy requirements of Rule 23(a).

(a)    **The Claims Of SPFPB Are Typical Of The Claims Of The Class.**

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has suffered the same injuries as the absent class members, as a result of the same course of conduct by defendants, and its claims are based on the same legal issues.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (holding that the typicality requirement is satisfied if claims "arise[ ] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability"). "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." *Weinberg*, 216 F.R.D. at 253.

The questions of law and fact common to the class members here, which predominate over questions that may affect individual claims, include:  (a) whether the federal securities laws were violated by defendants' acts; (b) whether defendants' statements during the Class Period omitted and/or misrepresented material facts; (c) whether the defendants acted intentionally or recklessly; (d) whether the market price of AIG stock was artificially inflated due to the activities complained of; and (e) the extent

of damages class members sustained and the appropriate measure of those damages. SPFPB's claims are typical of the claims of the members of the proposed class.  SPFPB, like all members of the class, alleges that certain of AIG's high ranking officers violated the Exchange Act by publicly disseminating false and misleading statements, and by failing to disclose material adverse facts about AIG during the Class Period.  Further, SPFPB, as did all of the members of the proposed Class, acquired AIG stock at prices inflated by Defendants' misrepresentations and omissions and was damaged thereby. The typicality requirement is satisfied because the claims asserted by SPFPB are based on the same legal theory and arise from the same course of conduct, and each class member makes similar legal arguments to prove Defendants' liability.

> **(b)    SPFPB Will Fairly And Adequately Represent The Interest Of The Class.**

The adequacy requirement demands that the representative party "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).  In order to satisfy the adequacy requirement of Rule 23(a), the Court must examine:

> (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.

*Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

The interests of SPFPB are clearly aligned with the members of the proposed Class so that the SPFPB will pursue the vigorous prosecution of the claims.  There is no evidence of any antagonism or conflict between the interests of SPFPB and the proposed

Class members.  As detailed above, SPFPB shares substantially similar questions of law and fact with the members of the proposed Class, its claims are typical of the members of the Class, and it has taken significant steps to advance this litigation.  In addition, SPFPB has amply demonstrated its adequacy to serve as Class Representative by signing a Certification affirming its willingness to serve as, and assume the responsibilities of, Class Representative.  *See* Pollard Aff., Ex. A.

Finally, SPFPB selected and retained counsel highly experienced in prosecuting securities class actions who are highly qualified to represent SPFPB and the Class.  *See* Pollard Aff., Exs. C and D.  For these reasons, SPFPB should be appointed Lead Plaintiff in the consolidated action.

## III.    This Court Should Approve SPFPB'S Choice Of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval.  *See* §21D(a)(3)(B)(v); *see Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at *11 (S.D.N.Y. Dec. 21, 2007) (finding that the PSLRA gives the lead plaintiff primary control in selecting lead counsel); *see also In re Smith Barney Transfer Agent Litig.*, 05 Civ. 7583, 2006 WL 991003, at *6 (S.D.N.Y. Apr. 17, 2007) (employing a deferential standard in reviewing the lead plaintiff's selection of lead counsel).  SPFPB has selected the law firms of Lockridge Grindal Nauen P.L.L.P. and Mager & Goldstein LLP to serve as Co-Lead Counsel. The law firms have extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  *See* Pollard Aff., Exs. C and D.

## <u>CONCLUSION</u>

For the foregoing reasons, the City of Saginaw Police and Fire Pension Board respectfully requests that the Court: (i) consolidate all related cases; (ii) appoint SPFPB as Lead Plaintiff in the consolidated action pursuant to §27A(a)(3)(B) of the Securities Act of 1993, 15 U.S.C. §77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995; and (iii) approve SPFPB's selection of Lockridge Grindal Nauen P.L.L.P. and Mager & Goldstein LLP to represent it and serve as Co-Lead Counsel for the Class.

DATED:    July 21, 2008                Respectfully Submitted,


                                    **/s/ Lisa M. Pollard**
                                       Lisa M. Pollard
                                    LOCKRIDGE GRINDAL NAUEN, P.L.L.P.
                                    Lisa M. Pollard, Esq.
                                    One Pennsylvania Plaza, Suite 2020
                                    New York, NY  10119
                                    Telephone: (212) 271-8232
                                    Facsimile:  (212) 271-8258
                                    lmpollard@locklaw.com

                                    LOCKRIDGE GRINDAL NAUEN, P.L.L.P.
                                    Richard A. Lockridge, Esq.
                                    Karen Hanson Riebel, Esq.
                                    Nathan D. Prosser, Esq.
                                    100 Washington Avenue South, Suite 2200
                                    Minneapolis, MN  55401
                                    Telephone:  (612) 339-6900
                                    Facsimile:   (612) 339-0981

                                    Jayne Goldstein
                                    MAGER & GOLDSTEIN LLP
                                    1640 Town Center Circle, Suite 216
                                    Weston, FL  33326
                                    Telephone:  954-515-0123
                                    Facsimile:   954-515-0124
                                    jgoldstein@magergoldstein.com
                                    **[Proposed] Co-Lead Counsel**